CONNON WOOD LLP
NICHOLAS P. CONNON, State Bar No. 150815
nconnon@connonwood.com
ROBERT A. de By, *Pro Hac Vice* application pending
rdeby@connonwood.com
35 East Union Street, Suite C
Pasadena, California 91103
Telephone:     (626) 638-1750
Facsimile:     (626) 792-9304

Attorneys for Aldini AG

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| *In re* Ex Parte Application of<br><br>ALDINI AG<br><br>               Applicant,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery from Silvaco Inc., for Use in Foreign Proceedings. | Case No. 5:21-mc-80140 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

**TABLE OF CONTENT**

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................. 3

    A.   Aldini's Strategic Stake in Dolphin Integration .................................. 3

    B.   MBDA/Soitec Prepare to Raid Dolphin Integration ........................... 3

    C.   MBDA/Soitec Snatch Dolphin Integration's Assets for A Mere €200,004 ........... 5

    D.   MBDA's President Divulges the Main Motive Behind the Raid ........................... 6

    E.   The Pending French Proceedings ......................................................... 8

        1.   Aldini's French Third-Party Opposition Proceeding Against the Lifting
            of the Injunction Against the Re-Sale of the Dolphin Integration Assets ........ 9

        2.   Separate French Art. 145 CPC Disclosure Proceeding ................................... 9

    F.   The Reasonably Contemplated French Proceedings ............................. 10

        1.   Contemplated French Liability Claims and Proceedings ............................... 10

        2.   Aldini's French Securities Fraud Proceeding ............................................... 10

        3.   Six Contemplated French Art. 145 CPC Disclosure Proceedings ................. 11

        4.   Contemplated French Criminal and Regulatory Proceedings ....................... 12

    G.   The Discovery Sought and Its Use in The French Proceedings ........................... 12

III. LEGAL FRAMEWORK ................................................................................. 13

IV.  ARGUMENT ................................................................................................... 15

    A.   Aldini's Application Meets the Three Statutory §1782 Requirements ................. 15

        1.   Silvaco "Is Found" in this District ................................................................ 15

        2.   The Discovery Is for Use in A Proceeding in A Foreign Tribunal ............... 15

        3.   Aldini Is An "Interested Person" ................................................................... 18

    B.   The Court Should Exercise Its Discretion to Grant Aldini's Application ........... 18

        1.   Silvaco Will Not Be A Participant in the French Proceedings and the
            Discovery Sought Is Outside the Jurisdictional Reach of French Courts ..... 18

        2.   French Courts Are Receptive to Section 1782 Discovery ............................ 18

        3.   Aldini Is Not Attempting to Circumvent French Proof-Gathering
            Restrictions ................................................................................................... 20

        4.   The Discovery Would Not Be "Unduly Intrusive or Burdensome" .............. 21

V.   CONCLUSION ................................................................................................. 23

i

## **TABLE OF AUTHORITIES**

**Page**

## **FEDERAL CASES**

*Akebia Therapeutics, Inc. v. Fibrogen, Inc.*
    793 F.3d 1108 (9th Cir. 2015)...................................................................... 15

*Bravo Express Corp. v. Total Petrochemicals & Ref. USA, Inc.*
    613 F. App'x 319 (5th Cir. 2015) ................................................................. 17

*Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*
    747 F.3d 1262 (11th Cir. 2014)..................................................................... 17

*Euromepa, S.A. v. R. Esmerian, Inc.*
    51 F.3d 1095 (2d Cir. 1995)........................................................................... 19

*Fonseca v. Blumenthal*
    620 F.2d 322 (2d Cir. 1980)........................................................................... 18

*Heraeus Kulzer, GmbH v. Biomet, Inc.*
    633 F.3d 591 (7th Cir. 2011).......................................................................... 22

*Husayn v. Mitchell*
    938 F.3d 1123 (9th Cir. 2019), *petition for cert. filed*, (U.S. Dec. 17, 2020) .................. 15

*In re Ambercroft Trading Ltd.*
    2018 U.S. Dist. LEXIS 98175 (N.D. Cal. June 11, 2018) ................................. 22

*In re Application of MacDonell*
    2020 U.S. Dist. LEXIS 122866 (E.D. Cal. July 10, 2020) .................................. 19, 20, 21

*In re Application of TPK Touch Solutions (Xiamen), Inc.*
    2016 U.S. Dist. LEXIS 159681 (N.D. Cal. Nov. 17, 2016)................................. 14

*In re Chevron Corp.*
    709 F. Supp. 2d 283 (S.D.N.Y. 2010)........................................................... 20

*In re Consellior SAS*
    2017 U.S. Dist. LEXIS 15045 (2d Cir. Feb. 2, 2017)....................................... 18

*In re Exparte Application of Societe d'Etude de Realisation et d'Exploitation pour le
    Traitement du Mais*
    2013 U.S. Dist. LEXIS 169009 (N.D. Cal. Nov. 21, 2013).............................. 19

*In re Global Energy Horizons Corp.*
    2017 U.S. Dist. LEXIS 19511 (N.D. Cal. Feb. 10, 2017)................................ 22

*In re Letters Rogatory from Tokyo Dist.*
    539 F.2d 1216 (9th Cir. 1976)....................................................................... 14

*In re Med. Corp. H&S*
    2020 U.S. Dist. LEXIS 169795 (N.D. Cal. Sep. 14, 2020)........................................ 13, 19

*In re Mentor Graphics Corp.*
    2017 U.S. Dist. LEXIS 1840 (N.D. Cal. Jan. 4, 2017) ................................................ 16, 19

*In re Société d'Etude de Réalisation et d'Exploitation Pour Le Traitement du Mais*
    2013 U.S. Dist. LEXIS 167219 (E.D. Pa. Nov. 22, 2013).................................................. 19

*In re Veiga*
    746 F. Supp. 2d 8 (D.D.C. 2010) ........................................................................................... 20

*Intel Corp. v. Advanced Micro Devices, Inc.*
    542 U.S. 241 (2004)................................................................................................... passim

*Khrapunov v. Prosyankin*
    931 F.3d 922 (9th Cir. 2019)................................................................................................ 14

*London v. Does*
    279 F. App'x 513 (9th Cir. 2008) ........................................................................................ 19

*Mees v. Buiter*
    793 F.3d 291 (2d Cir. 2015)................................................................................................. 22

*Metallgesellschaft v. Hodapp*
    121 F.3d 77 (2d Cir. 1997)................................................................................................... 20

*Optimal Invs. Servs, S.A. v. Berlamont*
    773 F.3d 456 (2d Cir. 2014)................................................................................................. 18

*Paul v. Furstenberg Fin. SAS*
    785 F. App'x 882 (2d Cir. 2019).......................................................................................... 18

*Sandra Holding Ltd. v. Fawzi Musaed Al Saleh*
    2019 U.S. Dist. LEXIS 116920 (D. Mass. July 15, 2019).................................................. 23

*Symeou v. Hornbeam Corp.*
    722 F. App'x 7 (2d Cir. 2018).......................................................................................... 14, 16

*United States v. Sealed 1*
    235 F.3d 1200 (9th Cir. 2000).............................................................................................. 16

## **STATUTES**

28 United States Code § 1782 ....................................................................................... passim

Federal Rules of Civil Procedure, Rule 26................................................................................ 22

## **OTHER AUTHORITIES**

French Code of Civil Procedure, Article 145............................................................................ 21

EX PARTE APPLICATION FOR DISCOVERY UNDER 28 U.S.C. §1782

1

*International Judicial Assistance: Procedural Chaos and a Program for Reform*
   62 Yale L.J. 515 (1953)...................................................................................................... 20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EX PARTE APPLICATION FOR DISCOVERY UNDER 28 U.S.C. §1782

Aldini AG ("Aldini" or "Applicant") respectfully submits this memorandum of points and authorities in support of its *ex parte* application for an order pursuant to 28 U.S.C. §1782 granting leave to obtain targeted discovery from Silvaco, Inc. ("Silvaco" or "Respondent") for use in foreign proceedings.[1]

## I.  INTRODUCTION

1.     This is a straightforward 28 U.S.C. §1782 application.  Aldini is a Swiss boutique merchant banking firm that acquired a significant strategic equity stake in Dolphin Integration, a French Euronext-stock exchange listed manufacturer of low energy consumption silicon chips and microchip technology that are key technologies for increasing the functionality of consumer electronics and other technical applications.

2.     Aldini has filed various legal proceedings in France alleging that MBDA and Soitec, two French companies, fraudulently gained control of Dolphin Integration and stripped it of all its assets, destroying the company and leaving it an empty shell.

3.     Soitec manufactures semiconductor materials used to manufacture chips that go into smart phones, tablets, computers, IT servers and data centers, as well as electronic components in cars, connected devices, and industrial and medical equipment.

4.     MBDA designs and manufactures missiles and missile systems for military use.

5.     MBDA and Soitec paid a mere €200,004 for all of Dolphin Integration's assets and business in a secret pre-pack bankruptcy proceeding, despite that Dolphin Integration had a stock market capitalization in excess of €50,000,000.

6.     MBDA and Soitec transferred Dolphin Integration's assets, including all it highly valuable intellectual property, into a SPV called Dolphin Design controlled by MBDA/Soitec.

7.     In the French proceedings for which Aldini requests discovery, Aldini seeks to hold MBDA/Soitec's liable for asset stripping and destroying Dolphin Integration on the basis that MBDA and Soitec fraudulently used inside information obtained via their directors on Dolphin Integration's Board, who served as a Trojan Horse, to acquire the company's assets and business

---

[1] Applicant may eventually find a need for testimony as well, but Applicant is not seeking such relief at this time.  The Proposed Subpoena ask only for the production of documents.

1

1  in violation of French law, and Aldini seeks disclosure against Soitec and Dolphin Design

2  concerning their role in the destruction and asset strip of Dolphin Integration.

3         8.     In addition to the pending French proceedings, Aldini is contemplating and

4  preparing a civil lawsuit in France against Soitec, MBDA, and the various individuals

5  (MBDA/Soitec's former and current employees and managers) who orchestrated the fraud through

6  which they seized Dolphin Integration's business and assets, to hold them liable for the fraudulent

7  and illegal asset-strip.

8         9.     Also, Aldini has prepared a securities fraud action against Dolphin Integration based

9  on the false and misleading information it disseminated to its shareholders and the market, in which

10  the company falsely portrayed its financial situation, made believe that it was seeking to continue

11  its operations, and that it would keep investors apprised of developments, while in reality Dolphin

12  Integration was secretly cooperating with MBDA/Soitec's asset stripping of the company.

13        10.    Aldini has prepared a number of additional contemplated disclosure actions under

14  French law against the individuals involved in the destruction and asset strip of Dolphin Integration.

15        11.    Aldini has prepared a French criminal complaint concerning the crimes committed

16  in connection with MBDA/Soitec's raid on Dolphin Integration.

17        12.    Aldini has also prepared a complaint to the French financial-markets regulator

18  concerning the violations of stock market regulations and misleading information disseminated to

19  the market to facilitate MBDA/Soitec 'stealing' Dolphin Integration's assets and business.

20        13.    Aldini believes that MBDA and Soitec manufactured Dolphin Integration's

21  purported financial failure that led to the bankruptcy proceedings in order to gain control of Dolphin

22  Integration via a secret pre-pack transaction to asset-strip the company.  Thus, leaving its

23  shareholders with nothing but an empty shell and depriving Aldini of its strategic equity stake.

24        14.    On November 12, 2020, Soitec announced that Dolphin Integration's memory

25  compiler technology and standard cell libraries had been sold to Silvaco, despite that

26  MBDA/Soitec's pre-pack acquisition by which they acquired Dolphin Integration's asset are being

27  challenged before the French Courts.  Both the new French bankruptcy trustee and the French

28  public prosecutor at the time objected to the sale to Silvaco going forward because the transaction

2

by which MBDA/Soitec had acquired the assets, and their ownership, were being contested by Aldini before the French courts.

15.     It is for use in those pending and contemplated French civil, criminal, and regulatory proceedings that Aldini seeks discovery from Silvaco.

## II.     FACTUAL BACKGROUND

### A.     Aldini's Strategic Stake in Dolphin Integration

16.     From July 2017 onward, Aldini acquired shares in Dolphin Integration until, by mid 2018, Aldini had acquired 28,466 shares amounting to a strategic equity position of 2,12% in Dolphin Integration.  Aldini's purpose for this significant equity investment was twofold: (i) Aldini believed that Dolphin Integration was seriously under-valued, and (ii) Aldini considered Dolphin Integration a take-over target.  (Declaration of Daniel Baumslag, Head of Debt & Equity Markets at Aldini ("Baumslag Decl."), at ¶¶10-12, 27).

17.     In January 2018, Dolphin Integration's market cap on the Euronext stock exchange reached €51,091,760.  Based on peer comparison and DCF valuation, Aldini believes the true enterprise value of Dolphin Integration to be in excess of €649,000,000.  (Baumslag Decl. ¶¶12, 29, 42).

### B.     MBDA/Soitec Prepare to Raid Dolphin Integration

18.     MBDA had been a Dolphin Integration customer since 2004, while Soitec needed Dolphin Integration's cutting-edge technology to participate in the exploding 'Internet-of-Things' market (*i.e.*, technology for consumer and other connected devices using integrated circuits, optimized for very low energy consumption).  Dolphin Integration's unique technology, designs, and services address both the needs of consumer markets and those of the industrial sector, including the European defense industry.  Dolphin Integration's work and products comprised and were based on intellectual property that neither MBDA nor Soitec had access to otherwise. (Baumslag Decl. ¶15).

19.     In May 2017, MBDA and Soitec expressed interest in acquiring Dolphin Integration, but their efforts failed largely because its founder Michel Depeyrot did not wish to step aside as the company's president.  Aldini believes that MBDA/Soitec then set out to wrest control of Dolphin

3

1    Integration from its shareholders, including Aldini, by subterfuge and fraud to obtain Dolphin

2    Integration's unique technology to integrate it in their own products.  (Baumslag Decl. ¶¶16-17).

3        20.    On May 5, 2017, Soitec maneuvered its employee Mr. José Beriot (Soitec's Vice

4    President of Public Affairs) onto Dolphin Integration's Board of Directors.  On June 20, 2017,

5    MBDA inserted its employee Mr. Harold van den Bossche (MBDA's Director Industrial Policy &

6    Supply Chain Management) as a member of the Dolphin Integration Board.  (Baumslag Decl. ¶¶53-

7    54).  By infiltrating Dolphin Integration, MBDA and Soitec obtained unfettered access to inside,

8    competitive, and financial information concerning Dolphin Integration, as well as giving

9    MBDA/Soitec significant influence over the Dolphin Integration's financing decisions.

10       21.    In January 2018, Dolphin Integration announced a 29% increase in sales revenue,

11   and in April 2018 announced that sales revenue was "up 16% compared to last year" and that this

12   "sharp increase reflects the desired inflection for product sales, which is driving sustainable growth

13   for the company."  (Baumslag Decl. ¶20 & Exhs. 3 & 4).

14       22.    However, on June 6, 2018, Dolphin Integration issued a Press Release, titled

15   "DOLPHIN   INTEGRATION   UPDATES   ITS   PERSPECTIVES   FOLLOWING   THE

16   POSTPONEMENT  OF  AN  IMPORTANT  ORDER"  that  stated  further:  "the  corporate

17   management of a historical customer . . . has decided to postpone one of its strategic programs."

18   The Press Release stated: "the liquidity risk is increased" but mentioned that "[i]n order to

19   overcome this situation . . . in the context of the authorization given to the Board of Directors . . .

20   to carry-out a capital increase or bank financing, the company's initiatives are in process for

21   strengthening its operating funds."  (Baumslag Decl. ¶21 & Exh. 5).

22       23.    Despite that Dolphin Integration's Press Release revealed that the company was in

23   need of a cash infusion, the Dolphin Integration Board of Directors failed to raise capital or to

24   arrange for additional bank financing; instead, it did nothing.  (Baumslag Decl. ¶28).

25       24.    Dolphin Integration had been hiding its financial woes from the market.  On June 5,

26   2018, at the request of Dolphin Integration's Board, a reorganization proceeding was started and

27   Maître Sapin of the firm Administrateurs Judiciaires Partenaires SELARL ("AJ Partenaires") was

28   appointed trustee in charge of a reorganization.  (Baumslag Decl. ¶55).

4

25.     To avoid fraudulent sales, Article L. 642-3 of the French Commercial Code prohibits the corporate officers of a company placed in judicial liquidation – including any "de jure or de facto manager" and "parent or relative, including up to the second degree, of the managers" and any "person having or having had the status of controller" – to make a take-over offer, either directly or through an intermediary.  (Baumslag Decl. ¶¶56-57).

**C.      MBDA/Soitec Snatch Dolphin Integration's Assets for A Mere €200,004**

26.     On July 6, 2018, MBDA and Soitec filed a secret pre-pack offer with the trustee and the Court for the acquisition of the business and all the assets of Dolphin Integration.  Replaced on July 13, 2018, by another secret pre-pack offer for a mere €200,004 in cash for the business and all the assets of Dolphin Integration.  (Baumslag Decl. ¶¶59-60).

27.     Neither the trustee nor Dolphin Integration published or disclosed the MBDA/Soitec pre-pack offer to the other shareholders, the market or the public.  (Baumslag Decl. ¶60).  Instead, on July 16 and 19, 2018, Dolphin Integration issued Press Releases and announced: "An observation period expiring in mid-January 2019 should be opened to allow the company to find the solutions to ensure the sustainability of its activities . . . the company will communicate any new stage of the procedure . . . The company aims to be a global player," without mentioning the MBDA/Soitec pre-pack take-over offer.  (Baumslag Decl. ¶¶30-31 & Exhs. 6 & 7).

28.     One July 19 and 20, 2018, one of Dolphin Integration's shareholders repeatedly offered to inject €2.5 million cash into Dolphin Integration to help it stave off a cash-crunch.  However, Dolphin Integration while acknowledging receipt of the shareholders messages, then ignored the offer of a cash injection, exacerbating Dolphin Integration's financial situation.  (Baumslag Decl. ¶33).

29.     On August 3, 2018, Soitec created a Special Purpose Vehicle ("SPV") called Dolphin Design for the purpose of acquiring Dolphin Integration's assets.  (Baumslag Decl. ¶61).

30.     On August 21, 2018, the French Commercial Court in Grenoble, without any advance publication, approved the pre-pack sale of all Dolphin Integration's assets and business for a mere €200,004 to MBDA and Soitec.  (Baumslag Decl. ¶63).  The entire proceeding was rushed through during the summer vacation month in France, and Dolphin Integration's

5

1    shareholders and the markets were kept in the dark.  Instead, Dolphin Integration issued various

2    misleading press releases, suggesting that it was working through its financial issues and would

3    emerge financially healthy.  (Baumslag Decl. ¶¶30-31, 39 & Exhs. 6 & 7).

4         31.    As it turned out, MBDA's director on Dolphin Integration's Board of Directors had

5    resigned in June, but effective only on August 19, 2018, two days before the Court approved the

6    pre-pack sale to MBDA and Soitec, in a blatant attempt to avoid running afoul of the French legal

7    prohibition against such insider dealing.  (Baumslag Decl. ¶62).

8         32.    Mr. José Beriot, Soitec's Vice President of Public Affairs remained on the Dolphin

9    Integration Board.  When sued by Aldini, Soitec maintained that Mr. Beriot sits on the Dolphin

10   Integration Board not for Soitec but purely as a matter of personal interest, a hobby of sorts.  Soitec

11   argued that as a result it had not violated the legal prohibition against fraudulent sales laid down in

12   Article L. 642-3 of the French Commercial Code.  (Baumslag Decl. ¶64).

13        **D.    MBDA's President Divulges the Main Motive Behind the Raid**

14        33.    While presenting MBDA's 2018 results on March 19, 2019, Mr. Bouvier, MBDA's

15   President at the time of the takeover of Dolphin Integration's assets and business, stated about

16   MBDA's Dolphin Integration asset-strip that MBDA gaining control of "this kind of highly

17   technological skillset is not only a factor of French sovereignty, but of European sovereignty."

18   Thus, MBDA revealed its motive behind its corporate raid on Dolphin Integration.  (Baumslag

19   Decl. ¶43 & Exh. 8).

20        34.    For years, MBDA's export of its missile technology had been frustrated by the

21   United States' objections and by it blocking a number of MBDA's international arms sales

22   transactions.  Something that was possible because MBDA's missiles contained American-made

23   components that allowed the United States government to block the sales under ITAR (*i.e.*,

24   International Traffic in Arms Regulations, 22 C.F.R. parts 120 through 130).  (Baumslag Decl.¶46).

25        35.    Mr. Bouvier's statement about protecting "French sovereignty" by way of the pre-

26   pack take-over of Dolphin Integration dovetailed with the French strategy to de-ITARize its

27   national defense industry.  A strategy set out by the French Minister of Defense, Ms. Florence

28   Parly, who on July 4, 2018 stated unambiguously, before the French National Assembly's National

6

Defense and Armed Forces Commission, that the solution to the United States blocking French arms sales by MBDA would be "the manufacturer of . . . MBDA missiles . . . [with] a similar component that would escape the ITAR mechanism." According to Ms. Parly "the manufacturer of these missiles […] MBDA […] makes investments in research and technology to be able to manufacture an analogous component that would escape the ITAR mechanism." (Baumslag Decl. ¶46 & Exh. 9).

36.     Two days later, on July 6, 2018, MBDA and Soitec filed their first secret pre-pack take-over offer for all the assets and the business of Dolphin Integration with the Commercial Court in Grenoble (France).

37.     Aldini believes that Soitec, in contrast to MBDA's geopolitical and strategic motives, was motivated by straightforward commercial gain. Soitec's core business is closely related to Dolphin Integration's and makes use of the technology developed by Dolphin Integration. On the announcement of MBDA/Soitec's pre-pack take-over deal of Dolphin Integration's assets, Soitec's share price shot up 7%, which meant the market valued the pre-pack acquisition of Dolphin Integration's business and assets at €251,000,000. Soitec's share in the pre-pack take-over was 60% because Soitec owned 60% of the SPV Dolphin Design in which MBDA/Soitec placed Dolphin Integration's assets. Hence, Soitec on the day of the announcement of the deal gained €150,000,000 in equity value. (Baumslag Decl. ¶¶50-51).

38.     Once MBDA had accomplished its strategic objective, MBDA sold Soitec a further 20% equity stake in Dolphin Design on November 13, 2020, the day after the transaction with Silvaco was announced. Thus, increasing Soitec's holding in Dolphin Design to 80%. Leaving MBDA owning 20%. (Baumslag Decl. ¶66).

39.     Based on Mr. Bouvier's statements, Aldini believes that MBDA conspired with Soitec and others to drive Dolphin Integration into receivership to then, furtively, grab the company's assets and business for a mere €200,004, while at the same time preventing potential competing bidders, such as Aldini, from learning about the opportunity. (Baumslag Decl. ¶44).

40.     Mr. Bouvier admitted as much, when he stated with regard to the Dolphin Integration take-over that his "objective is to avoid the takeover of this business by potentially non-European, hostile players."  (Baumslag Decl. ¶45 & Exh. 8).

41.     A few years ago, Antoine Bouvier was rumored to have been narrowly passed over as a candidate to lead the DGA, the French government's defense procurement agency in charge of the purchase of weapon systems for the French military.  According to press reports, the DGA may well be Mr. Bouvier's next career move after his current role at Airbus, co-owner of Soitec.  "His appointment will be very credible with the French government," reported an anonymous source, said to be familiar with Bouvier's newest role.  (Exh. 12).

42.     After leading MBDA/Soitec's pre-pack take-over of Dolphin Integration's business and assets in order to, in his own words, protect "not only . . . French sovereignty, but . . . European sovereignty . . . to avoid the takeover of this business by potentially non-European, hostile players," Mr. Bouvier received a significant promotion and was appointed Head of Strategy, Mergers & Acquisitions and Public Affairs at Airbus, effective 1 June 2019.  Airbus is one of Europe's leading defense contractors.  The French government, through its holding company SOGEPA owns a 10.9% equity stake in Airbus.  The German and Spanish governments hold a combined additional 15% equity stake in Airbus, through their respective governments' holding companies GZBV and SEPI. (Exh. 13).

**E.     The Pending French Proceedings**

43.     Aldini filed (i) a third-party opposition proceeding before the French Commercial Court in Grenoble against the lifting of the injunction against the sale of the Dolphin Integration assets, and (ii) is pursuing a separate disclosure proceedings before the French Court of Appeal in Grenoble against MBDA, Soitec and Dolphin Design.  (Baumslag Decl.¶73(d)-(e)).

44.     Accordingly, the discovery Aldini seeks here, is directly relevant to those issues now pending before the French Commercial Court and the Court of Appeal proceedings Aldini is pursuing simultaneously, and which are discussed below.

EX PARTE APPLICATION FOR DISCOVERY UNDER 28 U.S.C. §1782

**1.      Aldini's French Third-Party Opposition Proceeding Against the Lifting of the Injunction Against the Re-Sale of the Dolphin Integration Assets**

45.      Despite that the Court in initially approving the pre-pack offer had issued an injunction against the re-sale of the Dolphin Integration assets, Dolphin Design – the SPV controlled by MBDA/Soitec – applied for permission to sell the assets to Silvaco.  Both the new trustee and the Public Prosecutor resisted, but the lower court in Grenoble lifted its injunction.

46.      Aldini filed an appeal because it now appears that a Silvaco subsidiary was present in Court in 2018 and had knowledge of the availability of the assets.  Aldini believes that Silvaco was a (potential) buyer all along but that this was kept hidden from the Court, while MBDA/Soitec pretended that there was no interest in the assets, that no other buyers were available, and that time to look for them had run out, in order to convince the Court and the trustee not to advertise the assets and, instead, for the Court to accept a mere €200,004 cash despite that Dolphin Integration had a market cap in excess of €50,000,000.

47.      Accordingly, the discovery sought will be highly relevant to and be used in Aldini's proceeding against the lifting of the injunction against the resale of the assets, currently pending before the court in Grenoble (France).  (Declaration of Cataldo Cammarata, French counsel for Aldini ("Cammarata Decl.") at ¶¶7-14, 31-39; Baumslag Decl. ¶73(e)).

**2.      Separate French Art. 145 CPC Disclosure Proceeding**

48.      Aldini also has a separate pre-trial disclosure proceeding pending before the Court of Appeal in Grenoble pursuant to Art. 145 of the French Code of Civil Procedure ("CPC" – Code de procédure civil) against Soitec and Dolphin Design.  In this proceeding, Aldini needs to establish the fraud committed by MBDA/Soitec and its accomplices.  Two other Art. 145 CPC proceedings are pending before the French Supreme Court, against MBDA and the original trustee, respectively. (Baumslag Decl. ¶73(a)-(b) & (e)).

49.      In the French legal system, the appeal is a factual instance during which the parties are allowed to introduce new evidence.  (Cammarata Decl. ¶¶8-13).

50.      Art. 145 proceedings are aimed at obtaining discovery in connection with contemplated proceedings to establish Soitec's, MBDA's, their accomplices' and co-conspirators',

9

1   and the trustee's liability for the fraud, wrongful conduct, and breach of a company director's duty

2   of loyalty.   Pre-action disclosure under Art. 145 CPC requires these actions to be brought in

3   anticipation of contemplated, but not yet filed, proceedings.  (Cammarata Decl. ¶¶31-39).

4        51.    The Art. 145 disclosure action against MBDA and against Maître Bruno Sapin and

5   his firm AJ Partenaires are currently on appeal before the French Supreme Court, during which no

6   new evidence may be introduced.   Therefore, these proceedings are not currently relevant to

7   Aldini's application pursuant to §1782.   However, the Art. 145 proceeding against Soitec and

8   Dolphin Design is currently pending before the Court of Appeal in Grenoble, and it is highly

9   relevant to Aldini's §1782 request as Aldini must introduce evidence of fraud to establish its right

10  to pre-action disclosure before the French court.  (Cammarata Decl. ¶31-36).

11       **F.**     **The Reasonably Contemplated French Proceedings**

12           **1.**     **Contemplated French Liability Claims and Proceedings**

13       52.    Aldini's French counsel has been preparing additional, contemplated civil

14  proceedings to hold liable MBDA, Soitec, Mr. Beriot, and Mr. and Van den Bossche and others

15  responsible for the fraud perpetrated on Aldini.  MBDA, Soitec, Mr. Beriot, and Mr. and Van den

16  Bossche violated their fiduciary duties as members of the Board of Directors of Dolphin Integration

17  as well as the prohibition against fraudulent sales found Article L. 642-3 of the French Commercial

18  Code, which prohibits corporate officers of a company placed in judicial liquidation from making

19  a take-over offer, either directly or through an intermediary, thus abusing their position and inside

20  information in order to take-over and asset-strip Dolphin Integration.  (Baumslag Decl. ¶¶74(a),

21  75-76).

22       53.    The investigation and preparations for this proceeding have been ongoing, and

23  French counsel is preparing the Complaint.  (Cammarata Decl. ¶¶37-38; Baumslag Decl. ¶¶71, 74).

24           **2.**     **Aldini's French Securities Fraud Proceeding**

25       54.    Aldini is contemplating and has prepared a securities fraud proceeding in the

26  Commercial Court of Grenoble (France) against Dolphin Integration based on the misleading

27  information it disseminated to the stock market and shareholders, including Aldini.  (Baumslag

28  Decl. ¶¶73(b), 77-79).

55.     Aldini's securities fraud allegations focus on Dolphin Integration issuing deceptive and false information included in various press releases, hiding the company's true financial situation, and concealing the existence of MBDA/Soitec's raid on the company's assets with which Dolphin Integration secretly cooperated.    Furthermore, Dolphin Integration also misled the investing public, including Aldini, by stating that Dolphin Integration was developing a "business continuity plan" while its Board of Directors failed to seek bank financing or to raise additional equity, and turned down a cash infusion offer of €2,5000,000.  Instead, Dolphin Integration, among other misleading statements, declared on July 19, 2018, that it was going "to look for solutions aiming at ensuring the continuation of operations . . . [during] [a]n observation period expiring in mid January, 2019 [that] should be opened to allow the company to find the solutions to ensure the sustainability of its activities . . . [and that i]n accordance with the applicable regulations, the company will communicate any new stage of the procedure."  Thus, deceiving those purchasing and holding its shares to believe that Dolphin would be working on a solution until mid-January 2019, and that the company would inform its shareholders and the market of any relevant developments.  When, in fact, Dolphin Integration was cooperating in an asset strip, while some of those assets were apparently earmarked or destined for Silvaco.  (Baumslag Decl. ¶30-36 & Exhs. 6 & 7).

### 3.     Six Contemplated French Art. 145 CPC Disclosure Proceedings

56.     Aldini is contemplating, and its French counsel has been preparing, six additional Art. 145 CPC pre-action disclosure proceedings against the individuals involved in the asset stripping and destruction of Dolphin Integration, the associated fraudulent behavior, use of Trojan Horse directors, use of inside information, and violations of French Art. L. 642-3, against: (i) Antoine Bouvier, (ii) Henri Berger (CEO of MBDA), (iii) José Beriot, (iv) Harold van den Bossche, (v) Michel Depeyrot (founder and president of Dolphin Integration), and (vi) Christian Dupont (CEO of Dolphin Integration).  (Cammarata Decl. ¶¶37-39; Baumslag Decl. ¶¶74(c)-(h), 80-82).

57.     One element in the pending and contemplated disclosure proceedings that Aldini will need to establish, is the requirement found in Art. 145 CPC of a "legitimate reason" which has been interpreted as requiring Aldini to "demonstrate the existence of precise elements constituting

1  indications of a possible violation of a rule of law making it possible to establish the plausibility of

2  the facts the evidence of which may be necessary in the context of a possible trial on the merits."

3  Hence, the discovery sought is for use in those French contemplated proceedings, also.

4  (Cammarata Decl. ¶¶31-36).

5            **4.**     **Contemplated French Criminal and Regulatory Proceedings**

6       58.     In addition, Aldini's French counsel has prepared a formal criminal complaint and

7  a complaint to be filed with the French market regulator AMF.[2]  The complaints have been drafted.

8  As complainant, Aldini is allowed and will be expected to provide substantiation of its allegations.

9  As a result, the discovery sought is relevant to both the French criminal and regulatory complaints

10  and the related proceedings.  (Cammarata Decl. ¶¶40-54; Baumslag Decl. ¶¶74(i)-(j), 83-87).

11       **G.**    **The Discovery Sought and Its Use in The French Proceedings**

12       59.     Aldini is seeking discovery from Silvaco because its acquisition of a significant part

13  of Dolphin Integration's assets is highly relevant to the factual and legal issues in the current and

14  contemplated French proceedings.  In particular, because Silvaco's French subsidiary was present

15  in the courtroom when MBDA and Soitec, away from public scrutiny, presented their pre-pack

16  offer and argued that there were no other buyers and that they could not pay more than a mere

17  €200,004 for a company and its assets that had a market cap in excess of €51,000,000.  (Baumslag

18  Decl. ¶¶54, 65).

19       60.     The price and the conditions under which Silvaco acquired a part of Dolphin

20  Integration's assets, will be useful in the French proceedings not just as to the financial and fraud

21  aspects, but also as to the *mens rea* of MBDA and Soitec.  Likewise, the timing of the Soitec/Silvaco

22  or Dolphin Design/Silvaco transactions, who was involved, when it was first discussed, and the

23  motivation behind it, and why MBDA/Soitec did not reveal it previously.  (Baumslag Decl. ¶90).

24       61.     At the time of the pre-pack, MBDA and Soitec argued to the French Court that they

25  would continue Dolphin Integration to save the employees and employment.  Accordingly, the

26  French Court imposed a two-year injunction on the sale of Dolphin Integration's assets.  The

27

28  [2] Autorité des Marchés Financiers.

EX PARTE APPLICATION FOR DISCOVERY UNDER 28 U.S.C. §1782

1    presence of Silvaco's subsidiary at the time, and Dolphin Design's more recent May 25, 2020,

2    request to lift the injunction and to allow it to sell the Dolphin Integration assets – while Dolphin

3    Design is controlled by Soitec – without disclosing that Silvaco was the buyer, indicates that the

4    sale to Silvaco was premeditated.  It is noteworthy, also, that both the new French trustee, as well

5    as the Public Prosecutor, advised the Court against allowing the sale on the basis that the asset

6    transfer judgment was not final.  The discovery sought will throw light on whether Soitec

7    indemnified Silvaco against the risk that Dolphin Design/Soitec did not hold clear title, showing a

8    guilty mind.

9        62.    Aldini believes that Soitec misled the French Court into believing that there were

10   no other interested buyers, that only €200,004 could be found for all the assets combined, and that

11   MBDA/Soitec were not planning to break up the company, in order to deceive the Court (and the

12   French Public Prosecutor) into approving the pre-pack asset sale.  (Baumslag Decl. ¶52).

### III.    LEGAL FRAMEWORK

14       63.    "Applications brought pursuant to 28 U.S.C. § 1782 typically are considered on an

15   ex parte basis, since parties will be given adequate notice of any discovery taken pursuant to the

16   request and will then have the opportunity to move to quash the discovery or to participate in it."

17   *In re Med. Corp. H&S*, 2020 U.S. Dist. LEXIS 169795, *5 (N.D. Cal. Sep. 14, 2020); *see also In

18   re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976) (discussing §1782 and

19   noting "Letters Rogatory are customarily received and appropriate action taken with respect thereto

20   ex parte" because "[t]he witnesses can and have raised objections and exercised their due process

21   rights by motions to quash the subpoenas").  Hence, Aldini's *ex parte* application here is a proper

22   and accepted way to proceed.  *See In re Application of TPK Touch Solutions (Xiamen), Inc.*, 2016

23   U.S. Dist. LEXIS 159681, *5 (N.D. Cal. Nov. 17, 2016) ("[i]t is both common and proper to

24   conduct an ex parte process for a request to obtain an order authorizing discovery pursuant to

25   Section 1782").

26       64.    The purpose of Section 1782 is to provide applicants like Aldini judicial assistance

27   to obtain evidence for use in proceedings abroad.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542

28   U.S. 241, 247 (2004) ("Section 1782 is the product of congressional efforts, over the span of nearly

13

150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals"). "If the statutory requirements are met, the court is free to grant discovery." *Symeou v. Hornbeam Corp.*, 722 F. App'x 7, 9 (2d Cir. 2018).

65.     The statute, 28 U.S.C. §1782(a) states:

> "The district court of the district in which a person resides or is found may order him . . . to produce a document or other thing for use in a proceeding in a foreign . . . tribunal, including criminal investigations conducted before formal accusation . . . The order may be made pursuant to a . . . request made, by . . . any interested person."

66.     "Section 1782's statutory language has been distilled to permit district courts to authorize discovery where three general requirements are satisfied: (1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person'." *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019)

67.     When considering a Section 1782 request, courts first determine whether the three statutory requirements of Section 1782 are satisfied, and then consider whether four factors laid out by the Supreme Court in *Intel* support issuing a subpoena.  In exercising its discretion, a District Court should be guided by the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance;" (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.  The district court is "not required to address explicitly every factor or argument, nor [is] it required to issue a written order." *Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, 793 F.3d 1108, 1112 (9th Cir. 2015) (affirming District Court's granting §1782 discovery).

# IV.   ARGUMENT

## A.   Aldini's Application Meets the Three Statutory §1782 Requirements

68.     Aldini's request for discovery meets each of the three statutory requirements.

### 1.   Silvaco "Is Found" in this District

69.     The person from whom discovery is sought, Silvaco, "resides or is found" in this District.   28 U.S.C. §1782(a).   Silvaco's headquarters are located at 2811 Mission College Boulevard, 6th floor, Santa Clara, CA 95054.   (Declaration of Robert A. de By ("de By Decl.") and Exh. 14 (Silvaco website listing its "USA-Headquarters")).   Because Silvaco "is headquartered in [Santa Clara, California] . . . they . . . 'reside[] or [are] found' in the relevant district."  *See Husayn v. Mitchell*, 938 F.3d 1123, 1128 n.8 (9th Cir. 2019), *petition for cert. filed*, (U.S. Dec. 17, 2020) (No. 20-827).

### 2.   The Discovery Is for Use in A Proceeding in A Foreign Tribunal

70.     The discovery Aldini seeks is for use in a "proceeding before a foreign tribunal." 28 U.S.C. § 1782(a).   The Proposed Subpoena seeks documents relevant to and for use in the proceedings currently pending before the French courts and, also, for contemplated civil, criminal, and regulatory proceedings there.   As previous cases have recognized, French courts qualify as a "foreign tribunal" for purposes of §1782(a).   *See, e.g.*, *In re Mentor Graphics Corp.*, 2017 U.S. Dist. LEXIS 1840, *7-8 (N.D. Cal. Jan. 4, 2017) (granting discovery in aid of a proceeding before a French court pursuant to 28 U.S.C. §1782).

71.     The Supreme Court has held that §1782 "does not limit the provision of judicial assistance to 'pending' adjudicative proceedings . . . [and] reject[ed] the view . . . that §1782 comes into play only when adjudicative proceedings are 'pending' or 'imminent' . . . Instead . . . §1782(a) requires only that a [proceeding] be within reasonable contemplation."  *Intel*, 542 U.S. at 258-59 (holding that discovery was proper under §1782 even though the applicant's complaint was still only in the investigative stage).

72.     The Supreme Court made clear that for a proceeding to be within "reasonable contemplation" it is necessary "only that the evidence is eventually to be used in such a proceeding."  *Id.* at 259 (internal quotation marks and citation omitted); *see also United States v.*

1   *Sealed 1*, 235 F.3d 1200, 1205 (9th Cir. 2000) ("we never read an imminence requirement into

2   §1782 . . . under the statute the only restrictions explicitly stated . . . are . . . a foreign or international

3   tribunal, and that the testimony or material requested be for use in a proceeding in such a tribunal").

4         73.    Aldini has taken numerous steps that constitute objective evidence that additional

5   French litigation is "within reasonable contemplation."  Aldini's French counsel is preparing a civil

6   liability proceeding, a securities fraud lawsuit, a further six contemplated disclosure proceedings,

7   and has prepared a criminal complaint as well as a complaint to the Financial Markets Regulator.

8   (Cammarata Decl. ¶¶37-38; Baumslag Decl. ¶74(a)-(j), 75-87).  This in addition to the related

9   French proceedings pending already.  (Cammarata Decl. ¶¶31-36; Baumslag Decl. ¶73(a)-(e)).

10         74.    The existence of related litigation in the foreign forum has been held to constitute a

11   "concrete basis" to establish that an applicant is reasonably contemplating further proceedings there

12   so as to satisfy the second statutory requirement of §1782.  *Symeou*, 722 F. App'x at 9 ("[applicant]

13   previously brought two related actions in the BVI against [objector] and represented that it intended

14   to initiate further litigation once it obtained additional information.  This provides a sufficiently

15   concrete basis for a contemplated [foreign] proceeding") (internal quotation marks and citation

16   omitted).

17         75.    The disclosure proceedings are in anticipation of a contemplated civil liability

18   proceeding for damages against MBDA/Soitec and their accomplices.  Evidence gathering prior to

19   instituting contemplated litigation is normal in civil law jurisdictions, such as France, and strongly

20   indicates that a party is contemplating litigation.  *See*, *e.g.*, *Consorcio Ecuatoriano de*

21   *Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1271 (11th Cir. 2014)

22   ("district court committed no error in crediting [applicants]'s detailed explanation of its intent to

23   pursue civil and possibly subsequent criminal proceedings . . . it must submit its evidence with the

24   pleading at the time it commences the civil action . . . [i]n civil law countries . . . [applicant] is still

25   waiting for the evidence it seeks . . . we can discern no error in the district court's determination

26   that [applicant]'s foreign civil proceedings . . . were 'within reasonable contemplation'") (internal

27   quotation marks and citations omitted).

28

76.     Aldini's French counsel has been working on the Complaints for the contemplated civil liability/damages proceeding against Soitec, MBDA, Mr. Antoine Bouvier, Mr. José Beriot, Mr. Harold van den Bossche and various other individuals responsible for the fraud and breaches of fiduciary duty perpetrated in the take-over and asset-stripping of Dolphin Integration. (Cammarata Decl. at ¶¶37-38; Baumslag Decl. ¶¶74(a), 75-76).  *Bravo Express Corp. v. Total Petrochemicals & Ref. USA, Inc.*, 613 F. App'x 319, 323 (5th Cir. 2015) (second requirement satisfied where the petitioner's counsel provided a sworn affidavit and stated that the petitioner had already prepared its "claim of particulars").

77.     Aldini is moving with all deliberate speed and has been consistently challenging the fraudulent MBDA/Soitec take-over in the French courts since 2018, and Aldini will shortly be moving forward there with its additional, contemplated proceedings seeking to hold those responsible liable.  The three-year gap is insignificant as Aldini has been conducting numerous related proceedings necessary for preventing the asset strip from becoming a legal *fait accompli*. (*see*, *e.g*., Baumslag Decl. ¶73(a)-(e)).  *See Bravo Express Corp.*, 613 F. App'x at 322-23 (despite seven-year gap "authority does not support the proposition that a lengthy gap between the underlying events and the foreign suit precludes judicial assistance under §1782(a)").

78.     Aldini is also contemplating filing a criminal complaint for which the discovery sought will be used.  Aldini's French counsel has already drafted this criminal complaint. (Cammarata Decl. ¶¶40-54; Baumslag Decl. ¶74(i), 83-84).  It is beyond argument that criminal proceedings in France qualify under §1782.  *Fonseca v. Blumenthal*, 620 F.2d 322, 323 (2d Cir. 1980) ("one concern of Congress in amending §1782 in 1964 was to insure judicial assistance for French juges d'instruction . . . roughly equivalent to our grand jury"); *Optimal Invs. Servs, S.A. v. Berlamont*, 773 F.3d 456, 461 n.8 (2d Cir. 2014) ("the French *juges d'instruction* . . . the paradigmatic example of a 'tribunal' for the purposes of §1782") (italics in original).  Moreover, "[u]nder French law, private entities have substantial participation rights in criminal proceedings and are permitted to . . . file pleadings, and present . . . evidence before the Magistrate Judge." *In re Consellior SAS*, 2017 U.S. Dist. LEXIS 15045, *2 n.1 (2d Cir. Feb. 2, 2017).

79.     Hence, on that score, too, Aldini has met the second statutory requirement.  *Paul v. Furstenberg Fin. SAS*, 785 F. App'x 882, 885 (2d Cir. 2019) (§1782 statutory requirements met and no abuse of discretion in light of applicants "well-documented assertions, as well as those of their counsel, outlining the basis of their intended criminal complaint pending receipt of the evidence sought").

### 3.      Aldini Is An "Interested Person"

80.     As a named party in the current French actions, and plaintiff in the "reasonably contemplated" future lawsuits, Aldini qualifies as an "interested person."  *Intel*, 542 U.S. at 256 ("No doubt litigants are included among . . . the 'interested person[s]' who may invoke §1782")

### B.      The Court Should Exercise Its Discretion to Grant Aldini's Application

#### 1.

##### Silvaco Will Not Be A Participant in the French Proceedings and the Discovery Sought Is Outside the Jurisdictional Reach of French Courts

81.     "[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent §1782(a) aid."  *Intel*, 542 U.S. at 264; *London v. Does*, 279 F. App'x 513, 515 (9th Cir. 2008) (granting discovery where "[a]bsent this discovery, the evidence sought may be unattainable by the French court").  As a result, "the need for assistance pursuant to §1782(a) is greater than it would be in circumstances where the foreign tribunal may order parties appearing before it or third parties within its jurisdiction to produce evidence."  *In re Med. Corp. H&S*, 2020 U.S. Dist. LEXIS 169795, at *7.

82.     Silvaco is not a party in the proceedings before the French courts.  Nor will the French courts otherwise have power to compel discovery from Silvaco.  (Cammarata Decl. ¶18). Thus, this first *Intel* factor weighs in favor of granting Aldini's application.

### 2.      French Courts Are Receptive to Section 1782 Discovery

83.     *Intel*'s receptivity factor weighs in favor of ordering discovery here.  It is well-known and widely accepted that "French Courts are receptive to mutual judicial cooperation in civil matters."  *See In re Application of MacDonell*, 2020 U.S. Dist. LEXIS 122866, *5 (E.D. Cal. July

18

10, 2020); *In re Mentor Graphics Corp.*, 2017 U.S. Dist. LEXIS 1840 at *6-7 ("court is not aware of any policy of the French courts making them unreceptive to assistance from United States federal courts . . . French court concluded that the [*sic*] neither the Hague Convention nor the French rules of civil procedure prevented discovery in this court, provided that it was conducted in a lawful manner"); *In re Exparte Application of Societe d'Etude de Realisation et d'Exploitation pour le Traitement du Mais*, 2013 U.S. Dist. LEXIS 169009, *4 (N.D. Cal. Nov. 21, 2013) ("[applicant] asserts that no policy in . . . France . . . would cause [it] to reject U.S. court assistance, and the Court is unaware of any").

84.     Many other courts, across the country, have come to the same conclusion.  *See*, *e.g.*, *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995) (where "no authoritative declarations by French judicial, executive or legislative bodies objecting to foreign discovery assistance appear in the record, we are unable to accept the district court's conclusion that granting [applicant]'s discovery request will in fact offend the people of France"); *In re Société d'Etude de Réalisation et d'Exploitation Pour Le Traitement du Mais*, 2013 U.S. Dist. LEXIS 167219, *10 (E.D. Pa. Nov. 22, 2013) ("Court is unaware of any policy observed by the French . . . courts that would limit 'the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'") (quoting *Intel*, 542 U.S. at 264-65).

85.     The French courts have actually addressed 28 U.S.C. §1782 and held that *ex parte* requests and discovery granted under the statute in aid of French litigation are appropriate and unobjectionable.  (Cammarata Decl. ¶¶15-26).

86.     Moreover, "France has indicated its receptivity to mutual judicial cooperation in civil matters through its ratification of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters."  *In re MacDonell*, 2017 U.S. Dist. LEXIS 206836, *8 (E.D. Cal. Dec. 15, 2017).

87.     Of course, the French courts' receptivity to §1782 discovery is unsurprising; the Supreme Court has traced back the origins of §1782 to the 1850s and a request by the French Government to the United States for judicial assistance in order to obtain evidence located in the United States.  *Intel*, 542 U.S. at 247.  "In that year, the French government, on behalf of a French

19

court, sent to the Department of State a request for the examination of a witness in New York State. Chagrined, the Secretary of State told the French Ambassador that the Attorney General had advised him that there was no statute which authorized a federal court to compel the attendance of a witness for the execution of a letter rogatory from a French court."  Harry Jones, *International Judicial Assistance: Procedural Chaos and a Program for Reform*, 62 Yale L.J. 515, 540 (1953), cited in *Intel*, 542 U.S. at 248.

88.     "[A]bsent authoritative proof that a foreign tribunal would reject the evidence obtained with the aid of section 1782, a district court should not refrain from granting the assistance afforded under the Act."  *Metallgesellschaft v. Hodapp*, 121 F.3d 77, 80 (2d Cir. 1997).  As a result, a "party resisting discovery must point to 'authoritative proof' that the foreign tribunal would reject the evidence sought."  *In re Veiga*, 746 F. Supp. 2d 8, 23-24 (D.D.C. 2010).  Even so, "to decline a §1782(a) request . . . a district court must conclude that the request would undermine a specific policy of a foreign country or the United States."  *In re Chevron Corp.*, 709 F. Supp. 2d 283, 292 (S.D.N.Y. 2010).  Here that is not the case because District Courts have routinely permitted §1782 discovery in aid of French proceedings.  "While the views of the [French] court could be helpful, even opposition by it to these applications would not be dispositive . . . [because] courts have granted Section 1782 applications routinely in connection with matters pending in [French] courts."  *See id*.

### 3.     Aldini Is Not Attempting to Circumvent French Proof-Gathering Restrictions

89.     Aldini is already seeking pre-trial disclosure in the French courts by way of applications made pursuant to Art. 145 of the French Code of Civil Procedure.  (Cammarata Decl. ¶¶31-39; Baumslag Decl. ¶¶73(a)-(b), (d)).  However, Silvaco is not before the French courts or located in France, and Aldini seeks documents located in the United States.  Because Silvaco – a U.S. entity with its headquarters in California – is not a French entity and is not a party to the French proceedings, the only way that Aldini may effectively obtain the requested discovery is through §1782.

90.     It is only in good faith that Aldini seeks the assistance of this Court in obtaining documents from an entity that is outside the jurisdictional reach of the tribunals that will be handling the French proceedings.  *See MacDonell*, 2020 U.S. Dist. LEXIS 122866, at \*5 ("applicant is not attempting to circumvent foreign-proof gathering . . . [t]o the contrary, Applicant is seeking evidence which may not be accessible by other means to aid foreign-proof gathering").  "[I]t does not appear that Applicant is attempting to circumvent foreign proof-gathering restrictions . . . it does not appear that the French court could compel the requested business entities to provide evidence . . . since neither is a party to the French . . . proceeding.  At most, Applicant is seeking to 'fill a gap in foreign discovery devices' in order to assist the French court."  *Id*. at \*8-9.  As a result, this *third* Intel factor weighs in favor of granting Aldini's application.

### 4.     The Discovery Would Not Be "Unduly Intrusive or Burdensome"

91.     The fourth *Intel* factor instructs the courts to consider whether the request is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 265.

92.     "[W]hether a request is intrusive or burdensome should not be assessed based on the 'discovery scope' available in the foreign proceeding . . . [r]ather, a district court evaluating a §1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015).  Hence, "the ordinary tools of discovery management, including Rule 26, come into play; and with objections based on the fact that discovery is being sought for use in a foreign court cleared away, section 1782 drops out."  *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011)

93.     Here, Aldini's proposed discovery requests is narrowly tailored and minimally burdensome.  Aldini is seeking document discovery on only one topic: the acquisition by Silvaco of the assets from Dolphin Design that are contested and whose acquisition is the central issue in the French proceedings.  Hence, Aldini's document subpoena targets a discrete set of documents and information that is easily identifiable by Silvaco.  The universe of responsive documents is thus likely to be well-defined and searchable, avoiding any undue burden on Silvaco.

94.     Aldini's request seeks to gather documents related to well-defined transactions and assets.  Silvaco knows exactly the extent and confines of the transactions and the assets, both in scope and time, because it announced the acquisition itself: "Silvaco Inc., a leading supplier of EDA software and design IP, today announced that it has completed the acquisition of the memory compiler technology and standard cell libraries of Dolphin Design SAS."  (Baumslag Decl. ¶¶65, 90 & Exh. 1).

95.     Thus, Aldini's request is far from burdensome.  *See*, *e.g.*, *In re Ambercroft Trading Ltd.*, 2018 U.S. Dist. LEXIS 98175, *13-15 (N.D. Cal. June 11, 2018) (granting application where "Petitioner seeks to obtain documents and testimony relating to the transactions in which [company's] assets were transferred . . . [and objector] seeks to challenge the relevance, breadth, or burdensomeness of Petitioner's discovery requests . . . this factor, along with the other discretionary factors, favors authorizing §1782 discovery"); *In re Global Energy Horizons Corp.*, 2017 U.S. Dist. LEXIS 19511, *13 (N.D. Cal. Feb. 10, 2017) (granting §1782 application considering that "[a]s for whether the request is unduly burdensome or intrusive, proposed subpoena is limited to information [respondent] has relating to two specific transactions . . . and communications with individuals believed to be involved in the joint venture about those transactions or the . . . [t]echnology").

96.     Hence, Aldini's "discovery requests should not be unduly intrusive or burdensome for . . . [c]omplying with a limited request like this will likely not require the respondents to scour the entirety (or even the majority) of their business and financial records."  *See Sandra Holding Ltd. v. Fawzi Musaed Al Saleh*, 2019 U.S. Dist. LEXIS 116920, *15 (D. Mass. July 15, 2019)

97.     In light of their relevance to the claims in the current and contemplated French proceedings, Aldini's discovery requests are not unduly burdensome.  The information sought from Silvaco involves transactions occurring at a specific time among a specific group of players with regard to a narrowly defined (but important) set of contested assets.  The efforts to gather materials regarding such discrete transactions and set of events pales in comparison to their importance to the myriad French proceedings.

EX PARTE APPLICATION FOR DISCOVERY UNDER 28 U.S.C. §1782

98.     Accordingly, the *Intel* factors strongly favor the Court exercising its discretion to grant Aldini's application.  Courts in this Circuit have routinely permitted discovery under 28 U.S.C. §1782, when, as here, the applicant has satisfied the statutory requirements and the discretionary *Intel* factors weighed in favor of granting relief.

99.     Also, it is worth again noting that this application is merely for the issuance of the Proposed Subpoena.  Such issuance would be understood by Aldini to be without prejudice to the rights of Silvaco to object to the requests.  Any dispute about the specific terms, or the scope of the gathering efforts required, can first be dealt with by the parties directly through good-faith negotiations.  Thus, even if there are concerns about any of the requests (which there should not be), Aldini respectfully submits that such concerns, if any, need not be resolved by the Court at this stage and should not be ground for denial of Aldini's application.

## V.     CONCLUSION

100.     Aldini seeks narrowly tailored discovery for use in several currently pending, as well as for reasonably contemplated French proceedings.  Because Aldini's request satisfies the three statutory requirements of 28 U.S.C. §1782 and because the *Intel* factors all weigh in favor of granting the application, Aldini respectfully requests that this Court issue the proposed order attached as Exhibit A, authorizing the issuance of a subpoena in substantially the same form as Exhibit B.

DATED:          Pasadena, California
                June 1, 2021

                                              CONNON WOOD LLP

                                              _____/s/_____
                                              By:    Robert A. de By

                                              *Counsel for Applicant*
                                              *Aldini AG*

                                              Connon Wood LLP
                                              35 East Union Street, Suite C
                                              Pasadena, CA 91103
                                              Phone: (626) 638-1762
                                              rdeby@connonwood.com
                                              nconnon@connonwood.com

23