1  CONNON WOOD LLP
   NICHOLAS P. CONNON, State Bar No. 150815
2  nconnon@connonwood.com
   ROBERT A. de By, *Pro Hac Vice* application pending
3  rdeby@connonwood.com
   35 East Union Street, Suite C
4  Pasadena, California 91103
   Telephone:    (626) 638-1750
5  Facsimile:    (626) 792-9304

6  Attorneys for Aldini AG

7

8                  UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11  *In re* Ex Parte Application of                Case No.

12  ALDINI AG

13                  Applicant,

14

15  For an Order Pursuant to 28 U.S.C. § 1782
    Granting Leave to Obtain Discovery from
16  Silvaco Inc., for Use in Foreign
    Proceedings.

17

18

19

20              DECLARATION OF CATALDO CAMMARATA
        IN SUPPORT OF EX PARTE APPLICATION FOR AN ORDER
21     PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN
           DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

22       Pursuant to 28 U.S.C. §1746, I, Cataldo Cammarata, declare under penalty of perjury as

23  follows:

24       1.     Since 1979, I have been a member of the bar in Paris, France, and as such I am an

25  attorney in good standing licensed to practice law in France.

26       2.     I hold a Master of Arts degree (in English) from the University of Aix in Marseille

27  (France), a Master-degree in law from the Aix-Marseille Law School, and an LL.M. from Harvard

28

                                  1

1    Law School in the United States where I was a Harkness Foundation Fellow.

2          3.      In addition to my full-time practice as a French lawyer, for ten years I have taught

3    French law and lectured at both the Sorbonne (University of Paris I, Panthéon Sorbonne) and Aix-

4    Marseille law schools.  I also worked as an auditor at the Institut National des Hautes Etudes de

5    Sécurité (2002), and at the Cycle des Hautes Etudes pour le Développement Économique (2004).

6          4.      I am a senior partner at the French law firm of Squadra Avocats, which has its office

7    at 24 rue de Prony, Paris 75017, France.  My usual areas of practice are business law, international

8    trade, white collar defence and litigation.

9          5.      I submit this Declaration in support of Aldini's Application seeking the Court's

10   permission to obtain discovery from Silvaco Inc. ("Silvaco") and for an Order, pursuant to 28

11   U.S.C. §1782.

12         6.      I am familiar with the facts set forth in this Declaration.  Insofar as the facts are

13   within my own knowledge, the facts and matters testified to are true to the best of my own

14   knowledge and belief.

15   **The Pending French Proceedings**:

16         7.      I act for Aldini AG ("Aldini") in France and am the attorney of record in a series of

17   legal proceedings currently pending before the French courts.

18   **The Role of Evidence In French Proceedings & On Appeal**:

19         8.      Proceedings whether pending or contemplated by Aldini enable and, in fact, require

20   Aldini to submit evidence.

21         9.      It bears noting in particular that an appeal in civil proceedings in France is not

22   merely an appeal on points of law.  On the contrary, a Court of Appeal looks anew both at the facts

23   and the law concerning the dispute presented to it on appeal.  This principle is found in Art. 561 of

24   the French Code of Civil Procedure (*Code de procédure civil*, "CPC"), which states: "*The appeal*

25   *puts the matters adjudicated in issue before the court of appeal.  It is ruled on again in fact and in*

26   *law . . .*"  This so-called 'devolutive effect' (*l'effet dévolutif*), means that a party by lodging an

27   appeal, may force the Court of Appeal to consider all factual and legal aspects of the dispute and

28   claims presented during the appeal proceeding.

2

DECLARATION OF C. CAMMARATA FOR DISCOVERY UNDER 28 U.S.C. §1782

1    10.    While a party may limit its appeal to certain issues or claims, if a party on appeal

2    requests reversal of the judgment below, the Court of Appeal has to adjudicate the entire dispute

3    (facts and law) anew and to render a judgment without remanding the case back to the lower court.

4    Art. 562 CPC: "*Devolution operates for the entirety only when the appeal seeks to annul the*

5    *judgment or if the object of the dispute is indivisible.*"

6    11.    As a result, parties on appeal may introduce new factual arguments, documents, and

7    evidence to support on appeal the claim(s) they sued on below. Art. 563 CPC: "*To justify in appeal*

8    *the claims they had submitted to the trial judge, the parties may invoke new grounds, produce new*

9    *documents or introduce new evidence.*" However, the French Supreme court case law imposes on

10    the parties an obligation to concentrate all and any claim when first initiating a lawsuit as per the

11    "*principe de la concentration des moyens*".

12    12.    In addition, Art. 568 CPC enables a Court of Appeal to go beyond the grounds for

13    appeal advanced by the appellants, and to review the entirety of the dispute and to render final

14    judgment itself in the interest of justice, rather than remand the case to the lower court. This process

15    is called evocation (*l'evocation*). Art. 568 CPC states in relevant part: "*When the court of appeal*

16    *reverses or annuls a judgment which ordered an investigative measure, or which, ruling on a*

17    *procedural exception, terminated the proceedings, it may review the points not adjudicated if it*

18    *considers it in the interest of justice to render final judgment in the case, after having itself ordered,*

19    *if necessary, an investigative measure.*"

20    13.    In case of evocation, Art. 89 CPC ensures that the parties and their counsel will be

21    notified and heard so that they are able to introduce new evidence. Art. 89 CPC in that regard

22    states: "*When it decides to evoke, the court invites the parties, where applicable by registered letter*

23    *with acknowledgment of receipt, to appoint a lawyer within the time limit that it sets.*"

24    14.    Accordingly, the discovery sought is relevant and may be introduced before, and

25    used by, the French Court of Appeal in Aldini's appeal proceeding.

26    **The French Courts' Receptivity To §1782 Discovery**:

27    15.    In principle, our French procedural rules do not prevent Aldini from presenting

28    evidence in the French Proceedings irrespective of when that evidence may be obtained, even if it

DECLARATION OF C. CAMMARATA FOR DISCOVERY UNDER 28 U.S.C. §1782

1  is obtained at the very time of trial.

2      16.    As per article 143 of the French code of civil procedure (CPC) at the request of any

3  party to a lawsuit or at the court's initiative an investigation may be ordered bearing on the facts at

4  stake in the case.

5      17.    The French Code of Civil Procedure empowers French courts in French civil

6  proceedings to order production of evidence held by another party, or by third parties, if there is no

7  impediment.  Art. 11(2) CPC states:

8           "*Where a party holds evidence material, the judge may, upon the*

9           *petition of the other party, order him to produce it, where necessary*

10          *under a periodic penalty payment.  He may, upon the petition by one*

11          *of the parties, request or order, where necessary under the same*

12          *penalty, the production of all documents held by third parties where*

13          *there is no legitimate impediment to doing so.*" (*See also* Art. 142

14          CPC; Article 130 CPC where third parties hold material evidence).

15      18.    However, the power of the French courts to order anyone to produce evidence is

16  limited to the parties before it and to third party individuals and entities present in France.  French

17  courts do not have the power to order or force non-parties that reside abroad, such as Silvaco, to

18  produce evidence for use in a French proceeding save when resorting to the Hague Convention of

19  March 18, 1970 on the taking of Evidence Abroad in Civil and Commercial Matters ("Hague

20  Evidence Convention").

21      19.    Hence, there is no prohibition in France against the gathering of evidence in the

22  United States for use in civil, criminal or regulatory proceedings in France.  Accordingly, there

23  exists no French prohibition against Aldini obtaining discovery from Silvaco in the United States

24  pursuant to 28 U.S.C. §1782 for use in the French Proceedings.

25      20.    French courts have welcomed and permitted parties gathering evidence in the United

26  States by way us 28 U.S.C. §1782 for use in the proceedings before the French courts.

27      21.    As stated above, France is a signatory to the Convention of 18 March 1970 on the

28  Taking of Evidence Abroad in Civil or Commercial Matters further illustrating France's

4

DECLARATION OF C. CAMMARATA FOR DISCOVERY UNDER 28 U.S.C. §1782

1    commitment to international judicial cooperation when it comes to evidence gathering.

2        22.    For example, one of the most respected courts in France, in a case known as *Tribunal*
3    *de grande instance de Paris, 3ème chambre 2ème section, No. 15/00961 (29 septembre 2016)*, held:

4            "*Neither the Hague Convention of 18 March 1970 on the Taking of*
5            *Evidence Abroad, nor the rules of the Code of Civil Procedure*
6            *preclude a party from presenting during proceedings initiated in*
7            *France evidence gathered in the context of discovery proceedings*
8            *initiated in parallel in the United States, once such evidence has been*
9            *collected by a competent authority under the law applicable before*
10           *that State and in accordance with the procedures defined by that law,*
11           *it being noted that it will be for the French court to assess its*
12           *probative value and the impact on the merits of the dispute submitted*
13           *to it.*"

14       23.    The *Tribunal de grande instance* in Paris (now *Tribunal Judiciaire*) is a highly
15   respected court of first instance in France.  To the best of my knowledge, no reported decision of a
16   French court of equal or higher rank has rejected the use of evidence obtained in the United States
17   pursuant to 28 U.S.C. §1782.

18       24.    Attempts by parties to object to use of 28 U.S.C. §1782 have been rejected by the
19   French judiciary.  In a case known as *Cour d'appel de Versailles, 12ème chambre section 2, 20 mai*
20   *2010, n° 09/01617*, a party had sued its opponent for damages, alleging that its resorting to 28
21   U.S.C. §1782 in the United District Court for the Southern District of New York (S.D.N.Y.) was
22   abusive.

23       25.    The Versailles Court of Appeal rejected the claim, holding:
24           "*Whereas Y is still seeking compensation from X for the damage*
25           *suffered by her as a result of the action, which she considers abusive,*
26           *brought against her in the United States of America; that she argues*
27           *in this regard that after several years of proceedings in France, X*
28           *had suddenly initiated an ex parte procedure, a so-called discovery*

DECLARATION OF C. CAMMARATA FOR DISCOVERY UNDER 28 U.S.C. §1782

1   *procedure, before the United States district court for the Southern*

2   *District of [New] York, the Federal Magistrates Court in Manhattan;*

3   *that in the absence of an adversarial hearing, she [X] had obtained*

4   *an order obliging Y to produce a considerable number of documents*

5   *allegedly necessary for the solution of the present dispute, an order*

6   *whose revocation she had requested; that she [Y] underlines that this*

7   *revocation had been granted to her by the American judge in terms*

8   *particularly critical of X's attitude; that she believes that this aborted*

9   *attempt constitutes abuse;*

10  *Whereas, however, the proceeding initiated by X before the*

11  *district court for the southern district of [New] York was based on*

12  *Section 1782 of the United States Federal Code which allows a party*

13  *who is a foreign national, engaged in legal proceedings in a country*

14  *other than the United States of America, to ask the American judge*

15  *to compel the other party to the litigation to produce documents*

16  *within its jurisdiction, according to the American rules for the*

17  *production of documents; that if the court seized ultimately rejected*

18  *X's claims, it appears neither from the order of the decision, nor from*

19  *the reasons for which it was taken (the 'Myriad of reasons for*

20  *rejection' put forward by Y, certainly using an expression of the*

21  *judge, being reduced in reality to three reasons, none of which*

22  *demonstrates frivolousness or a bad faith by X) that X would have,*

23  *by using this procedure, committed an abuse of rights; that, besides,*

24  *if it is correct that X requested, before the court [in France], a*

25  *postponement of the date of the pleadings, this does not result in any*

26  *excessive dilatory intent, the request for postponement being justified*

27  *by the desire to support her case with new documents that she hoped*

28  *to be able to obtain;*

6

DECLARATION OF C. CAMMARATA FOR DISCOVERY UNDER 28 U.S.C. §1782

*Whereas in these conditions, Y's claim for damages against X, in compensation for the harm she allegedly suffered as a result of the action brought against her in the United States of America must be rejected;*

*[. . .]*

*FOR THESE REASONS*

*Ruling by judgment after having heard the parties, further doing justice,*

*Confirms the judgment appealed from insofar as it dismissed Y's claims and ruling further, dismissing her claim for damages for abusive proceedings before the United States district court for the southern district of [New] York."*

26.    For the avoidance of doubt, and to prevent there being any confusion, there exists a French blocking statute known as French Law No. 68-678 of July 26, 1968, as amended by French Law No. 80-538 of July 16, 1980 (the "French Blocking Statute"). It is a French criminal statute that primarily prohibits the transfer of documents and information of an economic, commercial, industrial, financial or technical nature located in France to foreign natural or legal persons. Hence, that French blocking statute has no application to the current situation.

**Use in the French Proceedings of the Evidence Sought by Aldini**:

27.    On November 12, 2020, Silvaco publicly (press reports) announced that it had acquired from Dolphin Design the "*memory compiler technology and standard cell libraries of Dolphin Design*" thus revealing itself to be the mystery buyer of the contested assets that are highly relevant to Aldini's rights and material in the pending and contemplated French Proceedings (Exhibit 1),

28.    It also appears from public sources (press reports) that Soitec did not simply sell the assets but is actually maintaining an interest in the Dolphin Integration assets and their exploitation, even after the sale to Silvaco. This, too, is highly relevant to the French Proceedings and is one of the reasons why discovery is sought from Silvaco.

DECLARATION OF C. CAMMARATA FOR DISCOVERY UNDER 28 U.S.C. §1782

29.     For example, it was publicly announced on July 23, 2020, a few months before the Soitec/Silvaco transaction came to light, that Carlos Mazure, Executive Vice-President of Soitec, joined the Silvaco Board of Directors.  As reported on BusinessWire on July 23, 2020, Iliya Pesic, Executive Chairman of the Silvaco Board stated Mr. Mazure "*has an extremely impressive track record . . . <u>orchestrating</u> the integration of industries along the value chain . . . a tremendous asset to Silvaco as we continue to grow our business*" (emphasis added).  Silvaco's CEO, Babak Taheri, added: "*I have known Carlos for several years . . . I look forward to <u>our close collaboration</u> on Silvaco's strategic planning*" (emphasis added).  (Exhibit 2).

30.     The discovery sought is central to the French Proceedings currently pending and contemplated.

**<u>The Pending French Pre-action Disclosure Proceeding</u>**:

31.     The discovery sought is relevant and will be used, also, for Aldini's pending pre-action disclosure proceeding.

32.     The legal foundation for a French pre-action disclosure proceeding is found in Art. 145 of the French Code of Civil Procedure (CPC).  Art. 145 states:

> "*If there is a legitimate reason to preserve or establish before any trial the evidence of facts on which the solution of a dispute could depend, the legally admissible investigative measures may be ordered at the request of any interested party, on request or in summary.*"

33.     As used in Art. 145 CPC, the words "*before any trial*" means that the application must be made before a party starts the proceeding in which it intends to use the evidence sought.

34.     In denying Aldini's Art. 145 CPC application – now on appeal to the French Supreme Court – the Court of Appeal in Versailles held that in order to satisfy the requirement of "*a legitimate reason*" mentioned in Art. 145 CPC, Aldini as part of its application "for an investigative measure *in futurum* did not have to provide proof, or even a beginning of proof, of the grievance invoked, <u>*but that [Aldini] must nevertheless demonstrate the existence of precise elements constituting indications of a possible violation of a rule of law making it possible to*</u>

8

DECLARATION OF C. CAMMARATA FOR DISCOVERY UNDER 28 U.S.C. §1782

1    *establish the plausibility of the facts the evidence of which may be necessary in the context of a*

2    *possible trial on the merits*" (emphasis added) (Versailles appellate sentence of Nov. 12, 2020).

3        35.    Thus, the Versailles Court of Appeal held that Aldini had failed the establish the

4    very evidence of fraud for which it was seeking disclosure.

5        36.    All the more reason why the discovery Aldini seeks from Silvaco is highly relevant

6    to another French Art. 145 CPC disclosure proceeding currently pending before the Court of Appeal

7    in Grenoble and the contemplated proceedings (Grenoble disclosure sentence of March 9, 2021) .

8    **The Contemplated French Proceedings:**

9        37.    Aldini is contemplating and preparing a number of legal actions in France.

10       38.    These proceedings are in an advanced stage of preparation.

11       39.    The need for and use of the evidence sought by Aldini from Silvaco in those

12   contemplated proceedings is similar to the use that will be made of such discovery in the pending

13   Art. 145 CPC proceeding before the Court of Appeal in Grenoble, but perhaps even more urgent

14   given the critical role played by the defendants there, their sheer number, and the interests at stake.

15   **Role of Civil Party in a French Criminal Proceeding:**

16       40.    Under the French inquisitorial legal system, complainants who believe they are the

17   victims of criminal acts may require the instigation of criminal proceedings.

18       41.    The prosecutor may decide to immediately commence the criminal action, either by

19   a direct summons before the criminal court, or by opening a judicial investigation entrusted to an

20   investigating judge (*juge d'instruction*).

21       42.    If the prosecutor either declines to prosecute or takes no action on the complaint

22   within three months under Art. 85 of the French Code of criminal procedure (*Code de procédure*

23   *pénal*, "CPP") the complainant may trigger the criminal action. The investigation is then entrusted

24   to an investigating judge.

25       43.    The complainant is thus able to force the Public Prosecutor to start the criminal

26   action (*action publique*).

27       44.    In addition, a complainant – including a shareholder of a company in the case of

28   crimes against a corporation – can initiate a criminal action as a so-called "civil party" if that party

1   has been directly and personally injured by the crime committed by the defendant. In the corporate

2   context, the shareholder then initiates a civil "*ut-singuli*" action seeking compensation on behalf of

3   the company.

4        45.    However, a civil party must first file a complaint with the Public Prosecutor before

5   filing a complaint with an investigating magistrate if needed (*see supra* Art. 85 CPP).

6        46.    The complainants/civil parties have extensive participation rights in the criminal

7   actions they instigated by filing a complaint.

8        47.    Besides granting the complainant/civil party access to the criminal case file, Art. 82-

9   1 CPP allows the complainant/civil party to request actions it considers "necessary to the discover

10  the truth," including but not limited to applications to "*request they be heard or their questioned,*

11  *for the hearing of a witness*" or any other acts that may help discover the truth as the investigating

12  judge may think appropriate.

13       48.    Hence discovery sought from Silvaco may also be used in making applications under

14  Article 82-1 CPP.

15       49.    The discovery sought from Silvaco is particularly relevant because Article 120 CPP

16  authorizes a complainant/civil party to ask questions and present comments under the direction and

17  control of the investigating judge.

18       50.    While Article 167 CPP allows a complainant/civil party to request the appointment

19  of an expert and to submit questions to such expert as the investigating judge may think fit.

20       51.    Moreover, in the course of argument hearing when the court convenes on the merits,

21  the complainant/civil party is authorized to file pleadings, to call particular witnesses and/or request

22  the court to have anyone attending the hearing to be called as a witness under Article 444 CPP.

23       52.    Specifically, under Art. 442-1 CPP, French lawyers representing a civil party "*may*

24  *directly put questions to the accused . . . the witnesses and all persons called to the bar*" after asking

25  the President of the Court for permission to speak or may ask questions indirectly by submitting

26  those question to the President of the Court so that she or he can interrogate the witness on that

27  basis.

28       53.    The discovery sought from Silvaco and the resulting evidence will play an important

10

DECLARATION OF C. CAMMARATA FOR DISCOVERY UNDER 28 U.S.C. §1782

1   role in Aldini exercising these powers and privileges, and it is essential for Aldini's ability to make

2   use of its rights as a complainant and as a civil party.

3       54.     Accordingly, the discovery sought by Aldini is directly relevant in the pending and

4   contemplated proceedings in France.

5       **Restrictions on My Ability to Testify**:

6       55.     Under the ethical rules of the French (Paris) Bar, of which I am a member in good

7   standing, there are severe restrictions on the extent to which I am able to testify here as to (i) all

8   and any information I am privy to and (ii) the work I am doing concerning the pending French

9   proceedings and the proceedings that my client Aldini is contemplating.

10      56.     That is because under French law and the ethical rules pertaining to attorneys

11  (*avocats*), the confidentiality privilege is unconditional, and any breach is liable to lead to criminal

12  charges being brought.  As mentioned above, the privilege covers all and any information a French

13  attorney is privy to and it must be stressed that even the client cannot waive the privilege, so that a

14  French attorney may not disclose such information him/herself.

15      57.     Art. 226-13 of the French Criminal Code (*Code pénal*) states: "The revelation of

16  information of a secret nature by a person who is the custodian of it either by state or profession,

17  or because of a function or a temporary mission, is punishable by one year of imprisonment and a

18  €15,000 fine."

19      58.     The National Internal Regulations and Rules and Related Ethics of the Paris Bar,

20  state: "Article 2: The professional secret – 2.1 Principles.  The lawyer is the client's necessary

21  confidant. The professional secrecy of the lawyer is a matter of public order.  It is general, absolute

22  and unlimited in time.  Subject to the strict requirements of its defense before any jurisdiction and

23  cases of declaration or disclosure provided for or authorized by law, the lawyer as in any matter

24  does not make any disclosure violating professional secrecy."

25      59.     Accordingly, I am not able to testify as to the specific nature of the claims and

26  evidentiary issues in the various pending and contemplated French Proceedings for which I act as

27  Aldini's counsel, and in aid of which Aldini is seeking discovery in the United States.  That in no

28  way lessens the urgency and need Aldini has for such discovery in aid of those French Proceedings.

DECLARATION OF C. CAMMARATA FOR DISCOVERY UNDER 28 U.S.C. §1782

1  Other than myself as a member of the French (Paris) Bar, Aldini is able to divulge such information.

2  Hence, I ask that the Court reads my Declaration in combination with any testimony Aldini and its

3  personnel are likely to proffer in support of its request for discovery in aid of the French

4  Proceedings.

5      **Statement of Truth**:

6      60.    In accordance with 28 U.S.C. §1746, I declare under penalty of perjury that the

7  foregoing is true and correct.

8

9                                        Executed in Paris, France
                                         on May 29 2021

10  Cataldo Cammarata
    EE35A629828744D...

11  30/05/2021

12                                        Cataldo Cammarata

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF C. CAMMARATA FOR DISCOVERY UNDER 28 U.S.C. §1782